## In re Horen.

Oct. 17, 1944.

W. S. Heidenberg for respondent.

Eldon S. Dummit, Attorney General, for complainant.

OPINION OF THE COURT BY JUDGE REES—Confirming recommendation of Board of Bar Commissioners.

In a proceeding before the Board of Bar Commissioners instituted by the Louisville Bar Association, the respondent, H. Sol Horen, was found guilty of unpro-

fessional and unethical conduct and the Board recommended that he be suspended from the practice of law in this state for a period of six months. He has excepted to the report of the Board of Bar Commissioners on the ground that its findings are not sustained by the evidence.

In its complaint before the Board, the Louisville Bar Association charged that H. Sol Horen paid two witnesses, Edward Kennedy, an infant 15 years of age, and James Burton, an infant 17 years age, both of Louisville, Kentucky, not to appear before the Alcoholic Beverage Control Board at a hearing to be held in Frankfort, Kentucky, on August 3, 1942. The respondent was the attorney for the Circuit Liquor Store in a proceeding instituted by Virgil P. Lynch, Alcoholic Beverage Control Administrator of the City of Louisville, to show cause why its license should not be revoked. It was charged that one of the owners or a clerk of the Circuit Liquor Store had sold to two minors, Edward Kennedy and James Burton, a pint of liquor in violation of the law. The City Administrator revoked the license and the respondent prosecuted an appeal for his client to the Alcoholic Beverage Control Board at Frankfort, and the appeal was set for hearing on August 3, 1942. The Alcoholic Beverage Control Board has power to hold hearings, subpoena witnesses, compel their attendance, administer oaths, and examine any person under oath. KRS 241.060. On Friday night, July 31, 1942, respondent went to the home of James Burton and asked him to come to his office with Edward Kennedy at 11 o'clock the next morning. The two boys appeared at his office on August 1, and he gave each of them $20 after they had agreed to go to Cincinnati, Ohio, and remain a few days. The boys took the money, went to the bus terminal, and boarded a bus to Cincinnati. The respondent admitted all of the essential elements of the charge. In the course of his testimony before the Board he said, concerning his conversation in his office with the two boys:

"At the time they came into my office I confronted them with the facts that I had learned about their previous history and the misstatements they had made at the early hearing of the case down here at Louisville; and then too, I learned again that they still had not been contacted or served with any process to appear Monday

morning. Both boys frankly thought that I was lying to them about the scheduled hearing, because they had no information about it. I told Burton, especially, that if he insisted on telling the same story and if I could disprove it at Frankfort, we might have to prosecute him for perjury. Both boys were very eager not to appear Monday morning if they could possibly help it. Burton suggested that he would like to go to Bowling Green, where his uncle resided. Young Kennedy, who testified here this morning, suggested that he had an uncle in Cincinnati and he would rather visit up there. Now on the spur of the moment, because all of our witnesses had been subpoenaed and we were ready for trial Monday morning, I felt, and felt that I had reason to believe, that either these boys were not going to appear that Monday morning or else that the prosecution didn't intend to try the case Monday, and inasmuch as I felt that I had exhausted every possible means of discrediting these boys before the Board, it occurred to me on impulse that if I could demonstrate to the Board that these boys had accepted money either to change their testimony or to evade testifying that it might carry some considerable weight in discrediting these boys whenever they did appear before the Board. * * * I told them to go home and get their parents' consent and return to my office at three o'clock. * * * Both boys returned to my office about two o'clock and informed me they had obtained their parents' consent and they would go to Cincinnati over the week end. Now, it was expressly understood at the time that they would return either Sunday night or Monday morning, because I had no further use for the boys after that. I gave them both $20 apiece.''

The offense charged against the respondent was that he procured the absence of the two prosecuting witnesses in a proceeding before the Alcoholic Beverage Control Board in which it was sought to revoke the license of his client to sell liquor at retail. If the charge be true, it was an attempt by the respondent in a case pending before the Board to obstruct justice by causing the absence of two essential witnesses at a hearing before the Board. This is a grave charge, and if an attorney obstructs the administration of justice he is guilty of malpractice and renders himself unworthy of the privileges which his license to practice law confers upon him. In the

early English case of Bushel v. Barrett, Ryan & M. (Eng.) 434, it was held that a person inducing another to absent himself from attending as a witness was guilty of an infamous offense, and although the American courts have not gone this far, yet, without exception, they have regarded the offense as serious and one which should be severely punished. An attorney is an officer of the court and as such has a most important part in the administration of justice. To perform properly his duty as an officer of the court, he must conform to a high standard of ethics. Anything less than these standards may impair the standing of the court and impede the administration of justice. In Taylor v. Commonwealth, 192 Ky. 410, 233 S. W. 895, a judgment of disbarment was affirmed. In the disbarment proceeding it was charged that J. H. Taylor, an attorney, was a party to an arrangement whereby the absence of a material witness at a trial was procured. In the course of the opinion it was said: "It is an obstruction of public justice for one to hire a witness not to appear against the accused. Commonwealth v. Berry, 141 Ky. 477, 133 S. W. 212, 33 L. R. A., N. S., 976 [Ann. Cas. 1912C, 516]. And where the offender is a member of the bar, and therefore an officer of the court sworn to support the Constitution and the laws of the commonwealth, he is guilty of gross professional misconduct, for which he may be and ought to be disbarred."

Respondent admits that he gave the two prosecuting witnesses $20 each to enable them to leave the state, but makes the naive assertion that his purpose was to discredit them as witnesses and not to procure their absence from the hearing. He introduced a number of reputable witnesses who vouched for his previous good reputation, and this testimony, no doubt, influenced the Board of Bar Commissioners to recommend a suspension for a short time rather than disbarment.

The recommendation of the Board is confirmed, and the respondent, H. Sol Horen, is hereby suspended from the practice of law in this state for a period of six months from this date.